IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT M. WILLIAMS, | ) | |
| | ) | |
| Claimant, | ) | No. 15 CV 0771 |
| | ) | |
| v. | ) | Jeffrey T. Gilbert |
| | ) | Magistrate Judge |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Robert M. Williams ("Claimant") seeks review of the final decisions of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's applications for disability insurance under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 7.]

Pursuant to Federal Rule of Civil Procedure 56, the parties filed cross-motions for summary judgment. [ECF No. 13; ECF No. 21.] For the reasons stated below, Claimant's Motion for Summary Judgment is denied, and the Commissioner's Cross-Motion for Summary Judgment is granted.

## I. PROCEDURAL HISTORY

Claimant filed applications for disability insurance benefits and supplemental security income on September 18, 2012, alleging a disability onset date of July 1, 2008.[1] (R. 194–206.)

---

[1] Claimant filed previous applications, including one that was denied in an ALJ opinion dated June 25, 2012. (R. 98–110.) Only his September 2012 applications are at issue in this appeal.

After an initial denial and a denial on reconsideration, Claimant filed a request for an administrative hearing. (R. 139.) Claimant, represented by counsel, appeared and testified before an Administrative Law Judge (the "ALJ") on March 11, 2014. (R. 25, 30–46.) A Vocational Expert (the "VE") also testified. (R. 47–51.)

On August 26, 2014, the ALJ issued a written decision denying Claimant's applications for benefits based on a finding that, from his alleged onset date through the date of his hearing, he was not disabled under the Social Security Act. (R. 11–19.) The opinion followed the five-step sequential evaluation process required by Social Security Regulations. 20 C.F.R. § 404.1520. As an initial matter, the ALJ noted that Claimant met the insured status requirements of the Social Security Act through December 31, 2013. (R. 13.) At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since his alleged onset date of July 1, 2008. (*Id.*) At step two, the ALJ found that Claimant had the severe impairments of asthma, chronic obstructive pulmonary disease ("COPD"), hypertension, right arm neuropathy, and coronary artery disease. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926) (the "Listings.") (R. 14.)

Before step four, the ALJ found that Claimant had the residual functional capacity ("RFC") to lift and/or carry twenty pounds occasionally and ten pounds frequently; to sit, stand, and lift for unlimited durations through an eight-hour workday. He could perform reaching, grasping and fine manipulations frequently but not constantly with his right upper extremity, and he should avoid concentrated exposure to pulmonary irritants. (R. 14–15.) Based on this RFC determination and the testimony of the VE, the ALJ concluded at step four that Claimant was

capable of performing his past relevant work as a laborer/landscaper, as actually performed at a light exertion level, and his past relevant work as a recreational aide. (R. 18–19.) Because of this determination, the ALJ found that Claimant was not disabled under the Social Security Act. (R. 19.) The Social Security Appeals Council subsequently denied Claimant's request for review, and the ALJ's decision became the final decision of the Commissioner. (R. 1.) See *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). See *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-107 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *Nelms v. Astrue*, 553 F.3d at 1097.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue,* 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue,* 529 F.3d at 413. Thus, judicial review is limited to determining whether the ALT applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms v. Astrue,* 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## III. DISCUSSION

Claimant argues, first, that the ALJ erred in his credibility determination because he discredited Claimant's testimony about the side effects of his medications and discounted his reported limitations in performing activities of daily living. Second, Claimant contends that the ALJ's assessment of his RFC is not supported by substantial evidence because the ALJ failed to properly consider all medical source opinions.

### A. The ALJ Did Not Err in Evaluating Claimant's Subjective Symptom Statements.

Claimant argues that the ALJ committed several errors in evaluating his testimony. As an initial matter, since the ALJ issued his decision in this case, the SSA has issued new guidance regarding the evaluation of subjective symptom statements in disability claims. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). The new policy interpretation ruling eliminates the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." *Id.* at *1; *Cole v.*

4

*Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) ("The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character.") Though SSR 16-3p post-dates the ALJ hearing in this case, the application of a new social security regulation to matters on appeal is appropriate when the new regulation is a clarification of, rather than a change to, existing law. *Pope v. Shalala*, 998 F.2d 473, 482-483 (7th Cir. 1993). In determining whether a new rule constitutes a clarification or a change, courts give "great weight" to the stated "intent and interpretation of the promulgating agency." (*Id.* at 483). Though a statement of intent is not dispositive, courts defer to an agency's expressed intent to "clarify" a regulation "unless the prior interpretation...is patently inconsistent with the later one." (*Id.*); *see First Nat. Bank of Chicago v. Standard Bank and Trust,* 172 F.3d 472, 479 (7th Cir. 1999), *Homemakers North Shore, Inc. v. Bowen,* 832 F.2d 408 (7th Cir. 1987); *see also Farrar v. Colvin,* 14 C 6319; 2016 WL 358827 (N.D. Ill. June 20, 2016); *Qualls v. Colvin*, No. 14 CV 2526, 2016 WL 1392320, at *6 (N.D. Ill. Apr. 8, 2016).

The Administration has in its new Social Security Ruling specified that its intent is to "clarify" its application of existing rules to "more closely follow [its] regulatory language regarding symptom evaluation." SSR 16-3p, 2016 WL 1119029 at *1. The Court defers to this expressed intent because the two Social Security Rulings are not patently inconsistent. Indeed, a comparison of the two reveals substantial consistency, both in the two-step process to be followed and in the factors to be considered in determining the intensity and persistence of a party's symptoms. Compare SSR 16-3p and SSR 96-7p. Stated differently, "[t]he agency has had only one position, although it has expressed that position in different words." *Homemakers N. Shore*, 832 F.2d at 413. Therefore, it is appropriate to evaluate Claimant's credibility argument in the context of the guidance the Administration has provided in SSR 16-3p.

As before, under SSR 16-3p, the ALJ carefully must consider the entire case record and evaluate the "intensity and persistence of an individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029 at *2. The ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding. *Goble v. Astrue,* 385 Fed. Appx. 588, 593 (7th Cir. 2010). However, the ALJ need not mention every shred of evidence so long as he builds a logical bridge from the evidence to her conclusion. *Id.* On review, a court will only reverse the ALJ's credibility finding if it is "patently wrong," lacking "any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008).

Among the factors an ALJ must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms are the individual's activities of daily living, the medications and treatments he has received for relief of pain or other symptoms, and the side effects the he experiences from his medications. *Yurt v. Colvin,* 758 F.3d 850, 860 (7th Cir. 2014); *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009). See 20 C.F.R. § 404.1527(c), 416.927(c); SSR 16-3p, 2016 WL 1119029, at *7. Claimant now disputes the ALJ's consideration of those factors.

In his hearing, Claimant indicated that his impairments, which include asthma and COPD, make it difficult for him to walk more than about ten yards before becoming winded and stopping to rest. (R. 31.) He uses inhalers to breathe. (R. 33–34.) Claimant also reported right hand neuropathy, dating from a "minor stroke" in 2008, that causes him difficulties with writing, signing his name, picking things up, opening jars, or fastening buttons with his right hand. (R. 30–32.) He estimated that he can lift three to five pounds with his right arm but has "no

problem" lifting ten pounds with his left arm. (R. 33.) In 2005, a doctor told him to avoid heavy lifting. (R. 40.) At that point, he switched from job duties that involved very heavy lifting to a job that required him to lift nothing heavier than a two-gallon gas can.[2] (R. 31–32, 37–38, 40–42.) He continued working until his stroke in 2008. (R. 30–31.)

Claimant reported in earlier filings with the Administration and testified at his hearing that his medications make him drowsy. (R. 38, 264, 283.) He testified that he dozes off two or three times during the day. (R. 38.) He reported that at home he does laundry and dishes, but at his hearing explained that he uses paper plates and disposable forks and spoons. (R. 32, 244, 270, 278.) He is no longer able to do yard work or walk around the block. (R. 39.)

Claimant argues that the ALJ improperly ignored his testimony about the side effects of his medications and, consequently, erroneously failed to account for his drowsiness in his RFC assessment. The ALJ referenced Claimant's claim that his medications caused drowsiness, but ultimately found that claim unsupported in the medical record. (R. 17.) The ALJ supported this conclusion in part with reference to a January 2009 treatment note indicating that Claimant was tolerating his medications well, without side effects, contrary to his testimony. (R. 15, 17, 586.) Claimant has provided no indication that he ever reported any side effects to his doctors in any of his numerous exams. Claimant instead points the Court to a printed list of several *potential* side effects associated with various classes of medications, not all of which are taken by Claimant.[3] (R. 1043.) The list is not specific to Claimant, and does not document his own reported

---

[2]     If full, a two-gallon gas can would weigh over twelve pounds. *See* https://www.fueleconomy.gov /feg/contentIncludes /co2_inc.htm (last visited October 24, 2016) (stating that a gallon of gasoline weighs about 6.3 pounds).

[3]

    The classes of medications listed are: antihypertensives, antihistamines, anticholinergics, analgesics, psychotropic, hypoglycemic agent, and antiarrhythmic agents. (R. 38.) Claimant testified in his hearing to feeling drowsy from his blood pressure pill (an antihypertensive) and also reported that the psychotropic medication he takes at night puts him to sleep. (R. 38.) His other reports attribute his drowsiness to classes of medication not on the list. (R. 264, 283.)

7

symptoms. Therefore, its relevance to his RFC is minimal. The ALJ properly considered the available evidence relating to Claimant's side effects and has provided the requisite explanation for discounting Claimant's testimony in this regard.

Claimant also faults the ALJ for placing undue emphasis on his "minimal" daily activities in discrediting his testimony. [ECF No. 14, at 9.] The ALJ considered Claimant's activities of daily living, as he was required to under the regulations, only after considering the available medical evidence and finding it inconsistent with Claimant's reported limitations. The ALJ wrote, "even after considering claimant's coronary artery disease, asthma, and COPD, I find there is no basis in the medical evidence for the claimant's extreme allegation of being winded after walking 10 yards." (R. 16.)     For this finding, the ALJ relied chiefly on numerous examinations and tests of Claimant's coronary and respiratory function, including: exam notes from June 2008, July 2008, August 2008 and January 2009 that recorded normal cardiac exams, "no respiratory distress," normal respiratory rate, and normal breath sounds; normal spirometry, lung volume, and arterial blood gases tests from January 2011; a spirometry test from November 2012; and additional normal cardiac and respiratory exams from May 2013 and November 2013. (R. 308, 326, 328, 363, 370, 483, 540, 588, 612, 855.)   The ALJ also described Claimant's impairments as "mainly longstanding," with little medical evidence that they had worsened, and noted that Claimant had worked despite his impairments. (R. 16.)

Though Claimant's counsel admitted at the hearing that he did not at that time "see the basis" in the medical records to support a restriction to no more than ten yards of walking, (R. 43–45), he now asserts that medical records do support his claims. [ECF No. 23, at 2–3.] Among the records referenced by Claimant is a pulmonary function test performed while he was still working, in June 2005, a full three years prior to his alleged onset date. (R. 701.) The ALJ

chiefly relied on other, later measures of Claimant's pulmonary function. Claimant also points out that he "coughed and gagged" through one such test in 2012. Nevertheless, the ALJ properly focused on the medical interpretation of the test, which described the result as "normal spirometry." (R. 483, 485.) His most recent pulmonary function test, which was cited by Claimant for its "decreased" or "reduced" findings, stated in a Summary and Interpretation section that Claimant had a "mild" obstructive defect, with normal lung volumes and normal gas exchange. (R. 1191.) Substantial evidence thus supports the ALJ's conclusion that Claimant's more extreme claims are not evidenced in the medical record.

To show that medical evidence supports his claimed symptoms, Claimant also refers to evidence of Claimant's right radial neuropathy. [ECF No. 23, at 2.] Claimant's neuropathy does cause some limitations in the use of his right hand, but the ALJ took these limitations into account when he formulated his RFC assessment that restricts Claimant to light work, with less than constant use of his right arm and hand. (R. 14, 17-18.) Claimant also lists other test results, some dated during the relevant period, but does not provide any link between the evidence and Claimant's claimed disabling symptoms. [ECF No. 23, at 2–3.] For example, Claimant refers to multiple findings about his diagnosis of esophagitis but has provided no testimony or opinion evidence indicating that his esophageal issues, alone or in combination with his other impairments, in any way inhibit his ability to work. (See R. 14, ALJ's analysis of Claimant's esophageal difficulties.)

Only after considering the medical evidence did the ALJ turn to analyzing Claimant's activities of daily living. The ALJ observed that Claimant's activities were "not limited to the extent one would expect, given the complaints of disabling symptoms." (R. 16.) Claimant's Veteran's Administration cardiologist, Kavita Krishnasamy, M.D., noted on May 3, 2013 that

Claimant was independent with his activities of daily living. (R. 586.)[4] Claimant himself reported that he attended to personal care (dressing, bathing, and the like) without difficulty and was able to do laundry, prepare simple meals, do the dishes, and occasionally drive. (R. 39, 243–44, 269–70, 278.) The ALJ properly looked to those activities, as well as the medical evidence, to assess the severity, intensity, and persistence of Claimant's symptoms. The ALJ did not, as Claimant now contends, equate Claimant's limited household activities with a forty-hour-a-week job. Instead, he properly relied on Claimant's reported activities of daily living, together with substantial medical evidence, to conclude that Claimant's symptoms were not as severe as alleged.

### B.     Flaws in the ALJ's Explanation of His RFC Assessment are Harmless

Claimant also contends that multiple errors in the ALJ's RFC assessment mandate remand. First, he essentially repeats his credibility argument, asserting that the ALJ failed to consider his testimony regarding his own abilities and the side effects of his medications, and therefore wrongly excluded those limitations from his RFC findings. However, as noted above, the ALJ did consider that testimony, and his reasons for not accepting the testimony were supported by substantial evidence.

Claimant's second criticism of the RFC determination is that the ALJ did not properly weigh the medical opinion evidence. Social Security regulations direct an ALJ to evaluate each medical opinion in the record. 20 C.F.R. § 404.1527(c). Because of a treating physician's greater familiarity with the claimant's condition and the progression of his impairments, the opinion of a claimant's treating physician is entitled to controlling weight as long as it is supported by medical findings and is not inconsistent with other substantial evidence in the

---

[4]      Though the ALJ did mistakenly cite this treatment note as "Exhibit 2F/33," the Court easily located it at 6F/33 (R. 587), a page cited by Claimant's attorney for other purposes in his brief.

record. 20 C.F.R. § 404.1527(c)(2); *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016); *Clifford v. Apfel*, 227 F.3d at 870. An ALJ must provide "good reasons" for how much weight he gives to a treating source's medical opinion. See *Collins v. Astrue*, 324 Fed. Appx. 516, 520 (7th Cir. 2009); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our ... decisions for the weight we give your treating source's opinion.").

When an ALJ decides for good reasons not to give controlling weight to a treating physician's opinion, he must determine what weight to give to it and other available medical opinions in accordance with a series of factors. These factors include the length, nature, and extent of any treatment relationship; the frequency of examination; the physician's specialty; the types of tests performed; and the consistency of the physician's opinion with the record as a whole. *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); see 20 C.F.R. § 404.1527(c), 416.927(c). In general, a physician who has personally examined the claimant is given more credence than one who has only reviewed the medical file. 20 C.F.R. § 404.1627(c)(1). An ALJ must provide "sound explanation" for the weight he gives each opinion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). If he does not discuss each factor explicitly, the ALJ should demonstrate that he is aware of and has considered the relevant factors. *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

Claimant argues that the ALJ should have adopted as controlling two physicians' statements, instead of dismissing them on the basis that they expressed the doctors' opinions about whether Claimant could work. Medical opinions do not include "opinions about a claimant's ability to work, a question the regulation reserves for the Commissioner." *Loveless v. Colvin*, 810 F.3 at 507. The regulations specify that no "special significance" should be given to the source of an opinion on issues reserved to the Commissioner. 20 C.F.R. § 404.1527(a)(2).

Nevertheless, even when a physician opines on such an issue, the ALJ cannot ignore the opinion, but must explain the consideration given to it. SSR 96-5p; *Hamilton v. Colvin,* 525 Fed.Appx. 433, 2013 WL 1855725 (7th Cir. 2013) ("A treating physician's opinion that a claimant is disabled must not be disregarded.")

In September 2007, prior to Claimant's onset date, treating physician Geoffrey Caplea, M.D. opined that Claimant was at that time unable to return to work due to neuropathy, which caused weakness in his right arm and hand, as well as weakness in his legs. (R. 616.) In response to a question about when Claimant could return to work, Dr. Caplea wrote, "TBD." (*Id.*) In May 2013, treating cardiologist Dr. Krishnasamy noted that Claimant's functional capacity was limited secondary to neuropathy and dyspnea (shortness of breath). (R. 547.) Despite making note of Dr. Krishnasamy's specialty as a cardiologist, the ALJ found that, because the opinions contained no specific functional limitations, Dr. Caplea's and Dr. Krishnasamy's opinions were not medical opinions, but were instead findings about Claimant's ability to work, which is an issue reserved for the Commissioner. (R. 18.) He offered no further consideration of the treating doctors' opinions. Instead, he gave "some weight" to the opinions of agency doctors who assigned Claimant an RFC with few restrictions, then added additional restrictions in light of documentation and testimony that had not been available to those doctors. (*Id.*)

The ALJ's analysis of Dr. Caplea's and Dr. Krishnasamy's opinions is lacking in two respects. First, even non-medical opinions "must not be disregarded" but merit some consideration, even while carrying no special weight. SSR 96-5p. Second, while it is true that the statements Claimant cites describe no specific functional limitations, portions of those statements do qualify as medical opinions. The regulations define "medical opinions" broadly to

include any statements from physicians "that reflect judgments about the nature and severity" of a claimant's impairment, including his "symptoms, diagnosis and prognosis, what [the claimant] can still do despite [his] impairment(s), and [his] physical or mental restrictions." 20 C.F.R § 416.927(a)(2). Both Dr. Caplea's and Dr. Krishnasamy's opinions contain diagnoses and symptom statements, components that easily meet the broad definition of "medical opinions." When an ALJ does not make any weight determination with respect to a treating physician's opinion, he fails to "minimally articulate his reasons for crediting or rejecting evidence of disability ... and failure to do so constitutes error." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)).

However, an ALJ's omission of a thorough explanation as to how he weighted opinion evidence "is subject to harmless-error review." *Schomas v. Colvin,* 732 F.3d 702, 707 (7th Cir. 2013). Under the harmless error standard, a court "will not remand a case to the ALJ for further speculation where [it is] convinced that the ALJ will reach the same result." *McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011); *see Schomas,* 732 F.3d at 707 (holding that a court will not remand a case to the ALJ when it "can predict with great confidence that the result on remand would be the same").

The Court is persuaded that remand would not alter the result in this case. The unweighted portions of Dr. Caplea's and Dr. Krishasamy's opinions provide no information about Claimant's impairments and restrictions that the ALJ has not already considered and addressed in his opinion. In 2007, prior to the onset date in this matter, Dr. Caplea linked his assessment of Claimant's work ability to neuropathy causing right arm weakness and leg weakness. (R. 616.) The ALJ was aware of Claimant's right arm neuropathy and considered it a severe impairment, ultimately incorporating that finding into the RFC assessment that restricts

Claimant from constantly reaching, grasping, or fingering with that arm or hand. (R. 13, 15, 17–18.) Dr. Krishnasamy, in turn, indicated that Claimant's shortness of breath and neuropathy are severe enough to cause some (unidentified) functional limitations. The ALJ made note of Dr. Krishnasamy's opinion, and explained that he had incorporated Claimant's shortness of breath, as well as his neuropathy, into the RFC assessment. (R. 18.) Because of Claimant's breathing difficulties, the ALJ found that Claimant no longer was able to perform the heavy labor he had done in the past and was instead limited to light work, with no concentrated exposure to pulmonary irritants. (R. 14–17.) The ALJ's RFC assessment does not conflict with either treating physician opinion. Thus, even if the ALJ re-evaluates Dr. Caplea's and Dr. Krishnasamy's opinion statements in accordance with the regulation, the Court is convinced on this record that the ALJ's RFC assessment will remain unchanged if the case were remanded. The Court will not remand solely to require completion of this pointless exercise.

Claimant makes one additional argument, claiming that the ALJ's failure to consider opinions contained in mental health treatment notes of October 16, 2013, also constituted error. It is Claimant's burden to prove that he has impairments that have lasted or will last twelve or more months and significantly limit his ability to work. *Stepp v. Colvin,* 795 F.3d 711, 719 (7th Cir. 2015); *Moore v. Colvin,* 742 F.3d 1118, 1121 (7th Cir. 2014). Claimant does not point to any evidence, other than intake notes from that one day in October 2013, that he has suffered any mental disorder or has received any mental health treatment. He did not list any mental impairments among his disabling conditions in his initial application for benefits. (R. 226) (referencing asthma, COPD, hypertension, and neuropathy.) He does not now contest the ALJ's omission of depression or a related disorder from his step two determination of severe and non-severe impairments. *See* (R. 14.) He, therefore, has not drawn any connection between the

isolated mental health intake notes of October 16, 2013 and his RFC. The ALJ's RFC finding is supported by substantial evidence and will not be disturbed.

## IV. CONCLUSION

For the reasons stated above, Claimant's Motion for Summary Judgment [ECF No. 13] is denied and the Commissioner's Motion for Summary Judgment [ECF No. 21] is granted. The decision of the Commissioner is affirmed.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: November 14, 2016